## INVALIDITY OF THE CLEVELAND ORDINANCE RELATING TO EMPLOYMENT OF GUARDS DURING INDUSTRIAL DISTURBANCES.

Common Pleas Court of Cuyahoga County.

### In re W. C. Reilly.

Decided, November 20, 1919.

*Strikes—Invalid Restrictions on Employment of Guards—Cleveland Ordinance in Violation of Constitutional Guaranties.*

The Cleveland ordinance, forbidding the employment of guards during industrial disturbances except under the restrictions set forth in the opinion, is in violation of rights which are fundamental and inalienable and which can not be abridged, or made difficult or impossible of exercise by the notions or opinions of a municipal director of public safety.

Stevens, J.

W. C. Reilly is under sentence of the Municipal Court to pay a fine of $25 and to be imprisoned in the workhouse for thirty days. To obtain release from imprisonment he brings this proceeding in *habeas corpus*, claiming that the ordinance under which he was sentenced is invalid, and that his imprisonment is therefore unlawful. If his claim in this respect is well founded, his right to be so released is clear.

Reilly was found guilty in the Municipal Court of violating ordinance No. 50140. This ordinance attempts to make it unlawful for any person to act as a special guard during industrial disturbances or strikes, unless he has first furnished to the director of public safety "such information as the director may require," and has given bond in the sum of $1,000, conditioned as is the bond of a regular police officer.

An analysis of the provisions of this ordinance, and a brief consideration of the nature and bearing of these provisions, will. in my opinion, make obvious the proper disposition of this case.

Section 1 of the ordinance forbids any person, firm or corporation from employing any person as a special guard "dur-

ing any industrial disturbance or strike,'' unless such person ''shall first have been empowered to act as such special guard by the director of public safety.''

Section 4 defines a special guard as any person, other than a policeman, ''acting as protector of property or in any police capacity.''

By sections 2 and 3, any person desiring to act as such special guard must make application for that privilege to the director of public safety, furnishing the director with such information as he, the director, ''may require.'' The ordinance is silent as to the character of information which the director may require, and neglects to provide that the director is *required* to authorize one to be a special guard if all *requirements* as to information have been met. A person ''empowered'' to act, as special guard, must give bond of $1,000, approved by the director, having the same conditions as the bond of a regular policeman, and such person ''shall be directly responsible to and under the orders of the chief of police of the city of Cleveland.''

If such person has not resided six months in the city of Cleveland, and ''fails to file satisfactory recommendations with the director of public safety, from the police department of the city of his last residence,'' his description and finger prints ''shall be forwarded to the police department of the place of last residence, and no action shall be taken by the director of public safety upon his application until *satisfactory* information from said police department is received.'' Any person who fails ''to conform to any of these requirements shall be fined not less than $25 nor more than $100, or imprisonment not more than thirty days, or both.''

What is the meaning of this ordinance, when we consider the possible and probable effects of its application?

It forbids the employment of guards ''during any industrial disturbance or strike.'' It does not forbid such employment during times of industrial quietude. In other words, guards may not be employed at the very time when there is a possible menace to property or personal safety. Guards may be employed at any time excepting when they may be needed. The

ordinance does not define "industrial disturbance" or "strike." How general must be the "disturbance" to make the ordinance applicable? So far as the language of the ordinance is concerned, if there is any industrial disturbance or strike *anywhere*, no one in the city may employ a guard, that is—"a protector of property."

Who is the director of public safety, that he may "require" information from persons acting as guards of private property? The ordinance does not specify what information he may "require." Under the ordinance he might "require" any kind of information which his fancy or his predilections or his sympathies suggested. After he has received all the information that he requires, there is no provision in the ordinance that he *shall* empower persons to serve as guards. He may grant or refuse the privilege as he sees fit. No matter how great may be the necessity for the protection of private property, the director of public safety would be acting entirely within the terms of the ordinance if he refused to "empower" special guards.

The ordinance says that a special guard is "any person acting as a protector of property." I doubt if a statute or ordinance similar to this has ever before been enacted in the United States. The protection of property has not, heretofore, been regarded as an activity so offensive in its nature as to require stringent regulation. The assumption heretofore has been that any one was acting entirely within his fundamental rights when he sought, without let or hindrance, from any one, to protect his property. A complete development of the idea embodied in this ordinance would suggest an amendment making it unlawful for any person to employ a guard to protect his life, or the lives of members of his family. The menace to public safety which inheres in the universal instinct of self-defense would thus be removed.

In support of the claim that the ordinance is valid, there is cited the case of *State of Ohio* v. *Hogan,* 63 O. S., 202. This case upheld the constitutionality of a law punishing a *tramp* who is found carrying a firearm. The Supreme Court held it proper to forbid tramps from carrying firearms. The tramp, it said, is a menace to society. "He is numerous, and he is

dangerous. He is a nomad, a wanderer on the face of the earth, with his hand against every honest man, woman and child, in so far as they do not promptly and fully supply his demands.''

To apply the reasoning and rule of the Supreme Court to this case, we must place the tramp and the one who seeks to protect his own property in the same odious class. It can not be done.

This is not a concealed-weapon ordinance, but one is justified even in carrying a concealed weapon if, in the language of Section 13693, General Code, ''he was, at the time, engaged in a lawful business, calling or employment, and the circumstances in which he was placed justified a prudent man in carrying such weapon for the defense of his person, property or family.''

By Section 4 of Article I, of the Constitution of Ohio, ''The people have the right to bear arms for their defense and security.''

Sec. 1 of the Bill of Rights declares that ''All men have certain inalienable rights, among which are those of defending life and protecting property.''

These rights are inalienable, and fundamental, and can not be abridged or restricted by a city council, or made difficult or impossible of exercise in accordance with the notions or opinions of a municipal director of public safety.

This ordinance is so manifestly invalid and unconstitutional that none of the extremest presumptions as to the validity of legislation enactments can serve to redeem any phase of it.

The writ is allowed, and the petitioner is discharged.